UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**MICHAEL J LUEDTKE** and
**KATHERINE L LUEDTKE**,

Debtors.

Case No. **13-60098-13**

# MEMORANDUM OF DECISION

At Butte in said District this 17th day of June, 2013.

At issue before the Court with respect to the Chapter 13 Trustee's objection to confirmation (Docket No. 24) is whether the Debtor is entitled to include an additional $200.00 "old vehicle" operation/transportation expense on line 27A of Debtor's Form B 22 C. In this Chapter 13 case, the Chapter 13 Standing Trustee Robert G. Drummond objects to confirmation of Debtors' First Amended Chapter 13 Plan under the "disposable income" requirement of 11 U.S.C. § 1325(b)(1), contending that the $200.00 "old vehicle" operation/transportation expense claimed by Debtors exceeds the allowed Internal Revenue Service ("IRS") Standards under 11 U.S.C. § 707(b)(2)(A)(ii)(I). *See* 11 U.S.C. §§ 1325(b)(1) and 707(b)(2)(A)(ii)(I).

A hearing on confirmation was held after due notice at Missoula on April 11, 2013. The Chapter 13 Standing Trustee Robert G. Drummond appeared in opposition. Debtors were represented at the hearing by attorney Edward A. Murphy of Missoula. The parties agreed to submit the matter on stipulated facts and briefs, which have been submitted and reviewed by the

1

Court. The Court's findings of fact and conclusions of law are herein set forth.

The Trustee requests that this Court reconsider its reasoning allowing the "old vehicle" expense in *re O'Connor*, 2008 WL 4516374 (Bankr. D. Mont. 2008), given the recent United States Supreme Court decision of *Ransom v. FIA Card Services, N.A.* 131 S.Ct. 716 (2011). After review of the record, briefs and applicable law, this matter is ready for decision. For the reasons set forth below the Court again declines to reconsider its decisions allowing the old vehicle expense.

This Court has exclusive jurisdiction in this Chapter 13 bankruptcy under 28 U.S.C. § 1334(a). Confirmation of Debtors' Plan is a core proceeding under 28 U.S.C. § 157(b)(2)(L). At issue is whether Debtors are entitled to the $200 "old vehicle" additional operating expense allowed in this Court and the Ninth Circuit. *Ransom v. FIA Card Servs., N.A.* 131 S.Ct. 716; *In re Ransom*, 380 B.R. 799, (B.A.P. 9th Cir. 2007), *aff'd* 577 F.3d 1026 (9th Cir. 2009), *cert. granted* 130 S.Ct. 2097 (2010); *In re Byrn*, 410 B.R. 642 (Bankr. D. Mont. 2008); *In re Baker*, 2011 WL 576851 (Bankr. D. Mont. 2011); and *In re O'Connor*, 2008 WL 4516374 (Bankr. D. Mont. 2008).

**FACTS**

The parties filed a Stipulation of the following facts:

    1. The Debtors, Michael J. Luedtke and Katherine L. Luedtke, filed their Chapter 13 bankruptcy petition in the United States Bankruptcy Court for the District of Montana on January 30, 2013 (Docket No. 1).

    2. The Debtors filed their Chapter 13 Statement of Current Monthly and Disposable Income on February 22, 2013 (Docket No. 13).

    3. In their Chapter 13 Statement of Current Monthly and Disposable Income, the Debtors calculated their annualized current monthly income on Line

15 in the amount of $76,876.32. Based upon their applicable household size (2), the Debtors checked the box on Line 17 stating that "The applicable commitment period is 5 years."

    4. The Debtors computed their monthly disposable income on Line 59 of Form B22C in the amount of $0.18. In making this computation, the Debtors deducted $672.00 on Line 27(a).

    5. The parties stipulate and agree that the Local Standards for transportation expenditure for a household with two or more vehicles is $472.00.

    6. The parties further stipulate and agree that the Debtors have added $200.00 to their transportation expense based upon the age and mileage of one of their vehicles. The Debtors have a 1993 Ford Taurus with 118,000 miles on it.

    7. The Debtors have proposed a Chapter 13 Plan by virtue of which they would pay $150.00 per month for a period of sixty (60) months. Out of this total amount paid, the administrative expense for the attorney and Trustee would be paid. The balance of the funds would be payable to the class of general unsecured creditors.

## DISCUSSION

As noted, the issue before the Court is whether an above-median income Chapter 13 debtor is limited to claiming the transportation/operating expense amount specified under the National Standards and Local Standards for purposes of the means test as applied under Form B22A, or whether the Court may allow the debtors to claim an additional $200 "old vehicle" operating expense. The Court has analyzed the recent Supreme Court decisions *Ransom* and *Hamilton v. Lanning*, 130 S. Ct. 2464, 2469 (2010). Both cases are relevant to the issue of how a bankruptcy court should apply the means test formula and, in particular, the deference to be given to the manner in which the IRS applies its standards with respect to transportation expenses as well as the statutory text, context, and purpose of § 707(b). Based on this analysis, the Court again concludes the Debtors are entitled to claim an additional $200 "old vehicle" operating

expense in calculating their projected disposable income.

The Trustee's objection raises the issue of the "disposable income" test under § 1325(b)(1)(B) and the standard amount allowed under the "means test" of § 707(b)(2)(A)(ii)(I). Section 1325(b)(1) provides that, upon objection by the Trustee or the holder of an allowed unsecured claim, a chapter 13 plan may not be confirmed unless the debtor pays all unsecured claims in full or the plan proposes to pay all the debtor's projected disposable income for the applicable commitment period to unsecured creditors. Trustee Drummond argues the statute refers to the IRS Local and National Standards Tables (IRS Table) for allowed amounts under the means testing, and because the additional $200 is not listed on the table, Debtors are forbidden from claiming such amount. Trustee also reminds the Court in his brief that total funding under the Plan will be $9,000.00. From this amount projected Trustee's fee would be $900.00, and the total attorney's fee would be $2,500.00. Thus, approximately $5,600.00 would be available for distribution to the class of general unsecured creditors.

The Debtors argue that the additional $200 deduction is supported by both the Internal Revenue Manual, Part 5, Chapter 8, Section 5.8.5.20.3(5) and case law. *Ransom* 131 S.Ct. 716; *In re Byrn*, 410 B.R. 642 (Bankr. D. Mont.2008); *In re Baker*, 2011 WL 576851 (Bankr. D. Mont. 2011). The Debtors acknowledge the courts are split on this issue. Both parties cite to *Ransom* in support of their position. Debtors claim *Ransom* invites the court to pay close attention to what is in IRS guidelines when interpreting what expenses should be allowed a debtor under the means test.

### A. The Means Test.

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA")

4

was an attempt by Congress "to improve bankruptcy law and practice by restoring personal responsibility and integrity in the bankruptcy system and ensur[ing] that the system is fair for both debtors and creditors." Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 (*quoting* H.R.Rep. No. 109–31, pt. 1, at 2 (2005). The cornerstone of BAPCPA was the implementation of the "means test" contained in section 707(b)(2). *In re Johnson*, 454 B.R. 882, 885 (Bankr. M.D. Fla. 2011) (referencing *Ransom*, 131 S.Ct. at 721). "Congress designed the means test to measure debtors' disposable income and, in that way, 'to ensure that [they] repay creditors the maximum they can afford.'" *Ransom* 131 S.Ct. at 725 (*quoting* H.R.Rep. No. 109–31, pt. 1, at 2 (2005)).

In Chapter 13 proceedings, the means test provides a formula to calculate a debtor's disposable income. According to the language of the statute:

> The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service [IRS] for the area in which the debtor resides ....

§707(b)(2)(A)(ii)(I).

The National and Local Standards referenced in this provision and referred to by Form B 22C are tables that the IRS prepares listing standardized expense amounts for basic necessities. These principal amounts that the debtor can claim as his reasonable living expenses thereby reduce his disposable income. According to the IRS website, the standards are part of the tax collection process, and are referred to as part of the "Collection Financial Standards." They are part of an internal administrative process "used to help determine a taxpayer's ability to pay a delinquent tax liability." *In re Slusher*, 359 B.R. 290, 307 (Bankr. D. Nev. 2007).

**B. IRS Publications**:

The Internal Revenue Manual "IRM" promulgated by the IRS is the official guide to income tax collection and regulation by the United States Government. The IRM is divided into different parts; relevant to this case are two subsection (15 and 8) of Part 5 which is entitled Collecting Process. 4 I.R.M. § 5.8, 5.15 (2012).

> **Part 5** of the Internal Revenue Manual is dedicated to the IRS tax collection function and includes instructions for Collection Personnel applicable to the collection of all types of past due tax. 3 I.R.M. Abr. & Ann. Pt. V Notes & Annotations.
>
>> § **15, Part 5**: This section of part five is *The Financial Analysis Handbook* providing instructions for analyzing the taxpayer's financial condition and contains the National and Local Standards references. 4 I.R.M. §5.15.1. Thus, the National and Local Standards are a subset of the Financial Analysis Handbook, which is a subset of the IRS's Internal Revenue Manual. *Ransom v. MBNA Am. Bank, N.A.* (In re Ransom), 577 F.3d 1026, 1028 (9th Cir.2009).
>>> § 5.15.1.1 **Collection Financial Standards**, which include national and local standards. According to § 5.15.1.1 of the Financial Analysis Handbook;
>>>> 6. The Allowable Living Expense (ALE) Standards, also known as the Collection Financial Standards, include **national and local standards**, which are guidelines established by the Service to provide consistency in certain expense allowances such as food and household expenses, medical expenses, housing and transportation. Reference to these standards will be found throughout this section. *Exhibit 5.15.1-2* provides instructions for on-line access to the actual standards. I.R.M.§ 5.15.1.1(6).
>>>>
>>>> 7. The standard amounts set forth in the national and local guidelines are designed to account for basic living expenses. In some cases, based on a taxpayer's individual facts and circumstances, it will be appropriate to deviate from the standard amount when failure to do so will cause the taxpayer economic hardship (See IRM 5.15.1.1(8)). The taxpayer must provide reasonable substantiation of all expenses claimed that exceed the standard amount. I.R.M.

6

§ 5.15.1.1(7).

Thus, the Financial Analysis Handbook refers the user to determine ALEs by using the web-based Allowable Living Expense Tables (Collection Financial Standards). The tables are located on following URLs: Internet access:

http:§www.irs.gov/individuals/article/0,,id=96543,00.html. Allowable expenses are further explained and explored in subparts 7, 8 and 9 of § 5.15.1. Subpart 7 details what should and may be allowed as expenses.

> 1. Allowable expenses include those expenses that meet the necessary expense test. *The necessary expense test is defined as expenses that are necessary to provide for a taxpayer's and his or her family's health and welfare and/or production of income*. There are three types of allowable expenses:
> • *Allowable Living Expenses* —based on National and Local Standards
> • *Other Necessary Expenses* —expenses that meet the necessary expense test, and are normally allowed
> • *Other Conditional Expenses* —expenses, which may not meet the necessary expense test, but may be allowable based on the circumstances of an individual case
>
> 2. The Allowable Living Expense (ALE) Standards, also known as Collection Financial Standards, provide for a taxpayer's and his or her family's health and welfare and/or production of income. These expenses must be reasonable in amount for the size of the family and the geographic location, as well as any unique individual circumstances. The total necessary expenses establish the minimum a taxpayer and family needs to live. I..R.M. § 5.15.1.7 (emphasis added).
>
> 3. National Standards: These establish standards for Food, Clothing and Other Items and Out-of-Pocket Health Care Expenses.
>
> > A. Food, Clothing and Other Items - These establish reasonable amounts for five necessary expenses: food, housekeeping supplies, apparel and services, personal care products and services, and miscellaneous. These standards come from the Bureau of Labor Statistics (BLS) Consumer Expenditure Survey. Taxpayers are allowed the total National Standards amount monthly for their family size, without questioning the amounts they actually spend.

4.Local Standards: These establish standards for two necessary expenses: 1) housing and utilities and 2) transportation. Taxpayers will normally be allowed the local standard or the amount actually paid monthly, whichever is less.

> B. *Transportation* - The transportation standards consist of nationwide figures for loan or lease payments referred to as ownership costs, and additional amounts for operating costs broken down by Census Region and Metropolitan Statistical Area. Operating costs include maintenance, repairs, insurance, fuel, registrations, licenses, inspections, parking and tolls. If a taxpayer has a car payment, the allowable ownership cost added to the allowable operating cost equals the allowable transportation expense. If a taxpayer has a car, but no car payment only the operating cost portion of the transportation standard is used to figure the allowable transportation expense. There is a single nationwide allowance for public transportation for taxpayers with no vehicle.

5.National and local expense standards are guidelines. If it is determined a standard amount is inadequate to provide for a specific taxpayer's basic living expenses, allow a deviation. Require the taxpayer to provide reasonable substantiation and document the case file.

Subpart 8 details expenses under National Standards.

Subpart 9 details expenses under Local Standards including transportation.

> B. Transportation. This includes vehicle insurance, vehicle payment (lease or purchase), maintenance, fuel, state and local registration, required inspection, parking fees, tolls, driver's license and public transportation. Public transportation includes mass transit fares for a train, bus, taxi, etc., both within and between cities.

•Transportation expenses are considered necessary when they are used by taxpayers and their families to provide for their health and welfare and/or the production of income. Employees are expected to exercise appropriate judgment in determining whether claimed transportation expenses meet these standards. Expenses that appear to be excessive should be questioned and, in appropriate situations, disallowed.

•When determining the allowable amounts, allow the full ownership standard amount, or the amount actually claimed and verified by the taxpayer, whichever is less. Allow the full operating standard amount, or the amount actually claimed by the taxpayer, whichever is less. Substantiation for the operating allowance is

>not required unless the amount claimed exceeds the standard. 4 I.R.M. Abr. & Ann. 5.15.1.9.

Clearly, the Collection Financial Standards are necessary to use and understand what is included in the tables.

>**Section 8, Part 5:** Deals with Offers in compromise (OIC). According to this section, an OIC is an agreement between a taxpayer and the government that settles a tax liability for payment of less than the full amount owed. 3 I.R.M. Abr. & Ann. § 5.8.1.1.1. The objectives of the OIC program are:
>- Effect collection of what can reasonably be collected at the earliest possible time and at the least cost to the government.
>- Achieve a resolution that is in the best interests of both the individualtaxpayerandthegovernment.• Provide the taxpayer a fresh start toward future voluntary compliance with all filing and payment requirements.
>- Secure collection of revenue that may not be collected through any other means. 3 I.R.M. Abr. & Ann. 5.8.1.1.4.
>
>Relevant to this discussion: § 5.8.5.20.3. Transportation Expenses (Subpart 20 details Allowable Expenses under section 5, the Financial Analysis of section 8 (OIC). Interesting, the language of this section is almost exactly the same as the language of Part 15 of the same chapter 5 (described above) except this section specifically authorizes the additional operating expense for older vehicles.
>
>>1. Transportation expenses are considered necessary when they are used by taxpayers and their families to provide for their health and welfare and/or the production of income. Employees investigating OICs are expected to exercise appropriate judgment in determining whether claimed transportation expenses meet these standards. Expenses that appear excessive should be questioned and, in appropriate situations, disallowed.
>>
>>2. The transportation standards consist of nationwide figures for loan or lease payments referred to as ownership costs and additional amounts for operating costs broken down by Census Region and Metropolitan Statistical Area. Operating costs include maintenance, repairs, insurance, fuel, registrations, licenses, inspections, parking and tolls.
>>
>>4. Operating Expenses—Allow the full operating costs portion of the local transportation standard, or the amount actually claimed by the taxpayer, whichever is less, unless the taxpayer provides documentation to verify and substantiate that the higher expenses are necessary. Substantiation for

9

>this allowance is not required.
>
>5. When the taxpayer owns a vehicle that is six years or older or has reported mileage of 75,000 miles or more, allow an additional operating expenses of $200 or more per vehicle. The additional operating expense will be allowed on any vehicle meeting the criteria, up to two cars per household.

The sections at issue are both part of the same chapter on collection processes. Both sections are almost verbatim regarding transportation expenses with the exception of section 8 adding the $200 vehicle operating expense. The section was added with the knowledge that debtors with older vehicles or vehicles with high mileage regularly incur operating expenses in excess of those who own newer vehicles and lower mileage vehicles.

**C. Application of the Means Test.**

While bankruptcy courts have struggled with the proper interpretation and application of the means test since the enactment of BAPCPA, two recent Supreme Court cases provide direction to this Court in dealing with the issue presented in this case: *Hamilton v. Lanning* and *Ransom v. FIA Card Services, N.A*.

In *Lanning*, the Supreme Court addressed the issue of whether a "mechanical approach," as opposed to a "forward-looking approach," should be used in calculating a debtor's "projected disposable income" for purposes of confirmation of a chapter 13 plan. *Lanning*, 130 S. Ct. at 2469 (*construing* 11 U.S.C. § 1325(b)(1)). In *Lanning* the debtor's current income was skewed by the one-time prepetition payment and the parties disagreed as to the court's ability to adjust Debtor's "projected disposable income" based on this information. According to the Court's analysis, "BAPCPA left the term 'projected disposable income' undefined but specified in some detail how 'disposable income' is to be calculated." *Lanning*, 130 S. Ct. at 2469-70. Section 1325(b) defines a debtor's "disposable income" as his current monthly income, less expenses that

10

are "reasonably necessary to be expended" for maintenance and support.  11 U.S.C. § 1325(b)(2).  Thus, the section implicated the Means Test under § 707(b) because § 1325(b)(3) provides that expenses "shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2)" if the chapter 13 debtor's "current monthly income" exceeds the state median.

In its analysis, the Court disagreed with the petitioner's assertion that § 1325(b)(3) only incorporated § 707 "special circumstances" into consideration with respect to calculating expenses.  The Court "decline[d] to infer from § 1325's incorporation of § 707 that Congress intended to eliminate, *sub silentio*, the discretion that courts previously exercised when projecting disposable income to account for known or virtually certain changes." *Lanning*, 130 S. Ct. at 2475.

In contrast to *Lanning* which involved the income side of the 'disposable income" equation, *Ransom* involved the question of applicable expenses claimed by a debtor.  In *Ransom*, the issue was "whether a debtor who [did] not make loan or lease payments on his car may claim the deduction for vehicle-ownership costs." *Ransom*, 131 S.Ct. at 723.  The Court looked at the text, context and purpose of the statute of the statute and held that a debtor could not take a deduction for an expense that was not actually incurred. *Ransom*, 131 S.Ct. at 721.

The Court focused on the word "applicable" as it appears in the first sentence of 11 U.S.C. § 707(b)(2)(A)(ii)(I)—"The debtor's monthly expenses **shall be** the debtor's *applicable* monthly expense amounts specified under the National Standards and Local Standards." *See Ransom,* 131 S.Ct. at 724 (quoting 11 U.S.C. § 707(b)(2)(A)(ii)(I)) (emphasis added).  The Court found that a debtor could only claim a deduction listed under the National and Local Standards if it was applicable to the debtor. *Id.*  The Court's discussion included explicit reference to the

11

Collection Financial Standards section of the Internal Revenue Manual and the proper scope of reference to the Manual in analyzing chapter 13 disposable income objections.

According to the Court, the Collection Financial Standards—the IRS's explanatory guidelines to the National and Local Standards—explicitly recognized the distinction between ownership and operating costs, ... "*Although the statute does not incorporate the IRS's guidelines, courts may consult this material in interpreting the National and Local Standards.*" *Ransom,* 131 S.Ct. at 726 (emphasis added). After all, the IRS uses those tables for a similar purpose—to determine how much money a delinquent taxpayer can afford to pay the Government. *Ransom*, 131 S.Ct. at 726. *"The guidelines of course cannot control if they are at odds with the statutory language.* But here, the Collection Financial Standards' treatment of the car-ownership deduction *reinforces our conclusion that, under the statute,* a debtor seeking to claim this deduction must make some loan or lease payments." *Ransom*, 131 S.Ct. at 726 (emphasis added).

The Court also noted "[o]ne cannot really 'just look up' dollar amounts in the tables without either referring to the IRS guidelines for using the tables or imposing pre-existing assumptions about how [they] are to be navigated." *Ransom* 131 S.Ct. at 728 (citing *In re Kimbro*, 389 B.R. 518, 533 (6th Cir. BAP 2008) (Fulton, J., dissenting)). "In this respect, context is provided by the IRS guidelines." *In re Johnson*, 454 B.R. 882, 893 (Bankr. M.D. Fla. 2011).

Footnote 7 of the *Ransom* majority decision states:

Because the dissent appears to misunderstand our use of the Collection Financial Standards, and because it may be important for future cases to be clear on this point, we emphasize again that the statute does not "incorporat[e]" or otherwise

> "impor[t]" the IRS's guidance. (opinion of Scalia, J.). The dissent questions what possible basis except incorporation could justify our consulting the IRS's view, but we think that basis obvious: The IRS creates the National and Local Standards referenced in the statute, revises them as it deems necessary, and uses them every day. The agency might, therefore, have something insightful and persuasive (albeit not controlling) to say about them.

*Ransom*, 131 S.Ct. at 726, n. 7.

In *Ransom*, the Court also found that a debtor's Means Test calculations should only include expenses that he actually incurs.

> Because Congress intended the means test to approximate the debtor's reasonable expenditures on essential items, a debtor should be required to qualify for a deduction by actually incurring an expense in the relevant category. If a debtor will not have a particular kind of expense during his plan, an allowance to cover that cost is not "reasonably necessary" within the meaning of the statute.

*Ransom*, 131 S.Ct. at 725.

In both *Lanning* and *Ransom*, the common theme is the Court's ability to apply the Means Test "consistent with the statutory text, to accurately reflect the debtor's particular circumstances." *In re Johnson*, 454 B.R. at 893–94.

Applying the above in the instant case, in accordance with its previous rulings, this Court finds and concludes that the use and incorporation of the IRS Manual is not at odds with the statutory language. The Court notes that the BAP decision in *Ransom*, affirmed first by the Ninth Circuit and then by the United States Supreme Court, specifically cited to *In re Carlin*, 348 B.R. 795, 796, 798 (Bankr. D. Or.2006) and the ability of a debtor to claim the $200 as an additional safeguard for debtors. *In re Emerson*, 2011 WL 6945757 (Bankr. D. Mont. 2011). This Court does not agree with the Trustee's assertion that the $200 older vehicle deduction is a separate adjustment, rather, it is part of operating expenses which is clearly part of the Local Standards.

The 9th Circuit in its *Ransom* decision repeated the BAP's citation to *Carlin*, quoting *Carlin*:

> Numerous safeguards are in place to protect both debtors and creditors. Debtors who own old or high mileage cars "free and clear," are entitled to an extra $200 per month operating expense. Also, a "free and clear" owner is not "stuck" with the vehicle operating expenses allowed under the IRS Standards. Section 707(b)(2)(B) is also available for "above the median" Chapter 13 debtors. Section 707(b)(2)(B), allows additional expenses based on special circumstances."

348 B.R. at 798 (citations omitted). We agree with the court in Carlin. . . .
*Ransom*, 577 F.3d at 1031.

The United States Supreme Court affirmed the Ninth Circuit decision. *Ransom*, 131 S.Ct. at 723, 729. While the issue decided in the Supreme Court's decision in *Ransom* dealt with ownership costs and not operating costs, the majority opinion specifically referenced both the Internal Revenue Manual and the IRS Collection Financial Standards in its analysis, *Ransom* 131 S.Ct. at 725.

> The Standards do account for those additional expenses, but in a different way: They are mainly the province of the separate deduction for vehicle "Operating Costs," which include payments for "[v]ehicle insurance, ... maintenance, fuel, state and local registration, required inspection, parking, fees, tolls, [and] driver's license." Internal Revenue Manual §§ 5.15.1.7 and 5.15.1.8 (May 1, 2004), reprinted in App. to Brief for Respondent 16a, 20a; see also IRS, Collection Financial Standards (Feb. 19, 2010), http:§ www.irs.gov/individuals/article/0,,id=96543,00.html. A person who owns a car free and clear is entitled to claim the "Operating Costs" deduction for all these expenses of driving—and Ransom in fact did so. . . ."

*Ransom*, 131 S.Ct. at 725–26.

Thus, this Court's reasoning in allowing the $200 per old vehicle expense based upon the Internal Revenue Manual and Financial Analysis Handbook is consistent with controlling

14

authority in this Circuit and the United States Supreme Court. *See In re Ransom*, 577 F.3d 1026, 1031 (9th Cir.2009), *aff'd Ransom v. FIA Card Services, N.A.*, 131 S.Ct. 716, 726, 178 L.Ed.2d 603 (2011), *quoting in re Carlin*, 348 B.R. 795 (Bankr. D. Or.2006) ("Debtors who own old or high mileage cars 'free and clear,' are entitled to an extra $200 per month operating expense."); *In re Byrn,* 410 B.R. 642 (Bankr. D. Mont. 2008); *In re Wilson,* 383 B.R. 729, 732 (8th Cir. BAP 2008); *In re Wenzel,* 415 B.R. 510 (Bankr. D. Kan.2009); *In re Brown,* 376 B.R. 601, 608 (Bankr. S.D. Tex); *In re Emerson*, 2011 WL 6945757 (Bankr. D. Mont. 2011).

      Although part of BAPCPA reforms were an attempt to take away the discretion of the bankruptcy courts and the ingenuity of debtor's counsel in proposing chapter 13 plans, the charts are not as clear as Congress hoped. Of concern also is the assumption that Congress wanted the IRS to determine bankruptcy issues. The IRS can change the charts for its own purposes without Congressional or public input. The IRS could, for example, unilaterally decide no deduction exists for ownership costs; and based on that, many debtors would be unable to confirm a plan. The IRS could reduce or eliminate the "operating costs" charts. Jonathan Hayes, *Preview of United States Supreme Court Cases* (ABA, 2010). At present, however, the tables remain the starting point for determining what a debtor can and should pay in light of their individual circumstances.

      Since this Court "may consult this material in interpreting" the Standards under *Ransom*, this Court sees no reason not to continue to consult the IRM and the Financial Analysis Handbook, wherein the old vehicle expense is authorized, for similar reasons as the IRS uses it and the reason Congress adopted the Means Test, "to help ensure that debtors who can pay creditors do pay them .... the maximum they can afford." *In re Emerson*, 2011 WL 6945757

(Bankr. D. Mont. 2011) (quoting *Ransom*, 131 S.Ct. at 721, 726).

**IT IS ORDERED** that a separate Order shall be entered in conformity with the above (1) overruling the Chapter 13 Trustee's Objection to confirmation; and (2) confirming Debtors' Chapter 13 Plan (Dkt. 16).

BY THE COURT

/s/ Ralph B. Kirscher
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana